(133 So. 689)

## DRENNEN v. MASON.

### 6 Div. 747.

Supreme Court of Alabama.
March 19, 1931.

Rehearing Denied April 23, 1931.

Drennen & Davis, of Birmingham, for appellant.

Victor Smith and Benners, Burr, McKamy & Forman, all of Birmingham, for appellee.

BOULDIN, J.

The bill is to enjoin the construction and operation of a miniature golf course in Milner Heights addition, a residence district in Birmingham.

After hearing upon sworn bill and answer with supporting affidavits, a temporary injunction was granted. The appeal is from that decree.

The ground upon which the bill is sought to be maintained is that the proposed golf course is a nuisance by reason of location.

The proposed site is a vacant corner lot fronting north on Highland avenue and west on Milner Crescent. Complainant owns and occupies a residence fronting east on Milner Crescent, a paved street 60 feet in width. The north line of the residence runs about with the south line of the golf course; and the nearest point of the dwelling is within some 75 to 80 feet of the nearest point of the golf course.

On the record we find Milner Heights a strictly residential district, one of costly and beautiful homes and premises.

Under the zoning ordinance of Birmingham there are A residence districts and B residence districts. This immediate section, along and near Highland avenue, is zoned in a B residence district.

Among the differences between A and B districts is that, in the latter, are permitted apartment houses, hotels, boarding houses and hospitals.

The specific annoyances and injuries, alleged to render a miniature golf course a nuisance in such location, may be briefly listed thus:

(1) Glaring high-powered electric lights used to light up the grounds for players at night.

(2) Noises and dust due to the gathering of large crowds.

(3) Operation of the course as a business enterprise.

(4) Injury to property values as a residence district.

(5) Special disturbance to the quiet and peaceful enjoyment of homes by disturbing noises at night, continuing until midnight or later each night.

[1] It does not sufficiently appear that strong glaring lights will shine directly upon the residence and front porch of complainant as charged. Cone-shaped shades and reflectors throwing the light upon the ground within a radius of some twelve feet of each light being contemplated and the complainant's residence being located on higher ground, the charge of glaring lights is not supported. The illuminated zone, with its scene of players, is not shown, nor charged to be a cause of complaint.

■■■ The noises of increased automobile traffic, the stopping, starting and shifting gears, incident to the rightful use of a public street, cannot be regarded in this day as substantial cause for injunctive relief which deprives the citizen of the use of his property. Nor can the voices which come from an orderly crowd at this kind of play during seasonable hours be so regarded.

Dust is not a necessary incident to a miniature golf course.

■ Courts will not anticipate mismanagement resulting in annoying dust or boisterous and disorderly noises.

■ Affidavits tend to show that miniature golf courses in other residence districts of the city attracting large crowds and continuing late into the night, are attended with loud voices and sound disturbing to the rest and comfort of homes in the neighborhood. It is charged that the proposed golf course will be conducted in like manner, and carry on until midnight every day of the week.

Whether such conditions are incident to the business, despite proper management, when continued far into the period when the people in their homes are entitled to sleep and rest, we are not prepared to assume. Much would depend on the crowds and other conditions.

But, however this may be, it would not justify an absolute injunction against the operation of the miniature golf course.

Regulation of the business, including the hours, as conditions may demand, is the remedy to be sought. If no such remedy could be had, and after actual trial untimely operation should prove a nuisance, the restraining hand of the court should be sought, not to destroy the business, but to prevent abuses.

That the miniature golf course is to be operated for profit as a business venture is not questioned.

■■■ The presence of a small office, storage of equipment, and the collection of fees from players, possesses no elements of a nuisance in fact. The profitable use of vacant property in a residence district is not, within itself, a nuisance to residents.

■■■ The contention of the parties in this connection arises from conflicting views as to the effect of the zoning ordinance as applied to this enterprise at this location.

Complainant insists the miniature golf course is "an amusement park operated for profit," not permitted in a residence district.

Respondent claims it is to be classed as a "playground," which is permitted.

When the ordinance was passed, miniature golf was unknown, and was, as of course, not in mind at the time the classification was made and defined in the ordinance.

The ordinance, by sections 6 and 7 defining A and B residence districts, and section 8, defining accessory uses (Birmingham Code, 1930, p. 338), aims to permit only such uses of property as are not confined to "commercial" and "industrial" districts.

But the ordinance does expressly permit uses of property for business purposes and deriving profit therefrom in residence districts; such business uses as are deemed not to injuriously affect the character of such area as a residence section.

Besides apartment houses, hotels, boarding houses, and hospitals, above noted, telephone exchange buildings, electric substations, and gas-regulating stations are permitted; so also are truck gardens, greenhouses, and nurseries. All these are business enterprises for profit.

It appears that respondent conferred with the board of adjustment, a body having supervision over the administration of the zoning law, had their approval of his project, obtained a permit, and thereupon invested some $2,500 by way of expenses and outlays, prior to the filing of the bill.

It further appears a hearing was had before the city commission, the governing body, on an application to revoke his permit, which application was denied.

It could not be pretended that either of those bodies could lawfully disregard their zoning law, and arbitrarily grant or sustain permits in violation of such law.

But their construction of the ordinance in the light of known conditions and to accomplish its purpose and spirit is not to be ignored. White v. Luquire, 221 Ala. 440, 129 So. 84.

We are of opinion that it was within the reasonable construction and administration of the zoning ordinance to classify the miniature golf course as a play ground.

We would not be construed as dealing with the effect of violating zoning laws by persons or by administrative bodies on the right of private persons to an injunction on the equitable ground of a nuisance in fact.

There is sharp conflict in the opinion of realtors, expressed by affidavits, touching the charge of injury to the value of complainant's property by the proposed use of this neighboring lot.

At most it is conjectural, and probably dependent on the abuses which we have discussed.

All things considered, including comparative injury during the period of a temporary injunction, we are of opinion this was not a proper case for temporary injunction.

The temporary injunction is here dissolved, and the cause remanded.

Reversed, rendered, and remanded.

ANDERSON, C. J., and GARDNER and FOSTER, JJ., concur.