# JOHN ULLRICH *v*. STATE OF MARYLAND

[No. 117, October Term, 1945]

354

*Decided April 12, 1946.*

The cause was argued before MARBURY, C. J., DELA-PLAINE, COLLINS, GRASON, and HENDERSON, JJ.

*Willis R. Jones,* with whom was *R. Palmer Ingram* on the brief, for the appellant.

*J. Edgar Harvey, Assistant Attorney General,* with whom were *William Curran, Attorney General,* and *J. Bernard Wells, State's Attorney for Baltimore City,* and *William H. Maynard, Deputy State's Attorney for Baltimore City,* on the brief, for the appellee.

GRASON, J., delivered the opinion of the Court.

John Ullrich, on the 18th day of July, 1945, conducted an undertaking establishment and funeral home at No. 2008 Orleans Street, Baltimore City. He and his wife owned a house and lot known as No. 2200 Erdman Avenue, in Baltimore City, where they resided. Under the Zoning Ordinance passed by the Mayor and City Council of Baltimore, their home was in a residential use district. On the day mentioned, he conducted a funeral from his residence, and as a result thereof he was indicted by the Grand Jury of Baltimore City. The indictment contained two counts: (1) That Ullrich, on the

day mentioned, "unlawfully did use certain buildings and land then and there located in a residential use district of said City, as shown on the Use District Map which accompanies the aforesaid Ordinance, to wit, at premises commonly known as number Twenty-two hundred Erdman Avenue, in said City, as an undertaking establishment and funeral home, he, the said John Ullrich, being then and there the owner in possession of the aforesaid buildings and land"; (2) that Ullrich, on the day aforesaid, in violation of the said ordinance, unlawfully did use certain buildings and land then and there located in a residential use district of said City, as shown on the Use District Map which accompanies the aforesaid Ordinance, to wit, the premises known as number Twenty-two hundred Erdman Avenue, in said City, as an undertaking establishment and funeral home, without first having obtained from the Buildings Engineer of said City, a certificate of occupancy to the effect that the use of said buildings and land conformed to the provisions of said Ordinance, the use of said buildings and land as an undertaking establishment and funeral home being a use created since the passage of the aforementioned ordinance."

The traverser filed a special plea to the indictment. It avers that on March 30, 1941, the date of the passage of Ordinance No. 1247, and continuously to July 18, 1945, he conducted an undertaking establishment and funeral home at 2008 Orleans Street, Baltimore City; that he had at said last mentioned address, all the appliances and paraphernalia necessary for embalming and preparing the dead for burial; that it has been the uniform and unvarying custom of the traverser, and all others engaged in the same business, to permit the removal of bodies prepared for burial from undertaking establishments and funeral homes to private residences to await appropriate funeral services; that the removal of bodies from funeral establishments to private residences has never been regarded as a violation of Ordinance No. 1247; that traverser did not individually own the premises known

as 2200 Erdman Avenue, in Baltimore City, but that the same was owned by the traverser and his wife, as tenants by the entireties, and used and occupied by them as a private home and place of residence; that said premises do not and did not on July 18, 1945, contain any appliances or paraphernalia necessary for the operation of an undertaking establishment and funeral home; that on the 17th day of July, 1945, at his establishment at 2008 Orleans Street, traverser prepared the body of Elizabeth Holle for burial, placed it in a casket, and conveyed the same to 2200 Erdman Avenue, in said city, and on the next day the said Elizabeth Holle was buried from his said residence and home on Erdman Avenue; that no charge was made for the use of the residence of the defendant and his wife, and no act or service of any kind was performed by the defendant in connection with the funeral that would not have been performed by the defendant or any other duly licensed funeral director if the said body had been kept and buried from any other private residence in Baltimore City, and that no act or service was performed at his said residence in connection with the burial of the deceased that is not customarily performed at private residences in said city and state, or that might not have been performed lawfully by any other duly licensed undertaker at this private residence. The plea avers that an interpretation of Ordinance 1247 that would forbid the use of the premises and improvements at 2200 Erdman Avenue for the purpose for which said premises were used on July 18, 1945, as aforesaid, would be arbitrary and unreasonable and have no substantial relation to the public health, safety, morals or general welfare of the community, and deprive the defendant and his wife of their property at that location without due process of law, and also deny to the defendant the equal protection of the law in violation of Section 1 of Article 14 of the Constitution of the United States.

To this plea the State demurred and the court sustained the demurrer. Thereafter a jury trial was waived

and the traverser demanded to be tried before the court, without the aid of a jury. The case went to trial under the general issue plea, and the court found the traverser guilty. From the judgment and sentence imposed, the case comes here on appeal.

There are no exceptions reserved in the record to the admission of testimony. All testimony that would have been available under the special plea was admitted in evidence.

Two questions are, therefore, presented on this record: (1) Did the court err in sustaining the State's demurrer to the special plea filed by the traverser? (2) If so, would the error be reversible, in view of the fact that all testimony available under the special plea was admitted at the trial?

The zoning law of Baltimore City has been declared to be constitutional by this court. *Jack Lewis, Inc. v. Mayor and City Council of Baltimore,* 164 Md. 146, 164 A. 220. In that case the provision of the Zoning Ordinance of Baltimore City, which excludes undertaking establishments, not existing at the time of its passage, from residential use districts, was held to be a valid and legitimate exercise of the police power. If the use of the defendant's home was in connection with and in furtherance of his undertaking business conducted at Orleans Street, that is to say, if said residence was used as a funeral parlor, it was a violation of the ordinance.

The counsel for appellant argues that it is lawful for a citizen in the City of Baltimore, not engaged in the undertaking business, to bury his dead from his home, and hence it is lawful for one engaged in that business to transport a body from his place of business to the undertaker's home in a residential use district and bury it therefrom. There is a vast difference between one not engaged in an undertaking business burying his dead from his home, and an undertaker using his home, not to bury his own dead therefrom, but to bury people whom he has been employed as an undertaker to prepare for burial and bury. It is perfectly manifest that the ordi-

nance never was intended to prohibit one not an undertaker from burying his dead from his residence. Indeed there would be no prohibition in such case for the body to be embalmed at the residence. But can it be said that an undertaker could embalm one, not a member of his family, at his home? His interest in the burial of such a person is a business and monetary interest, and when he uses his residence, in a residential use district for the purpose of embalming or conducting funerals therefrom of persons whose relatives have employed him as an undertaker, he is carrying on an undertaking business from his residence.

We cannot see that custom has anything to do with this case. We think it is preposterous to say that because citizens not engaged in the undertaking business bury their dead from their residences, that this constitutes a custom that would warrant an undertaker to use his residence in a residential use district in connection with his undertaking business. Custom is not involved here. We are dealing with a violation of the ordinance, purely and simply. The principle that contemporaneous construction of statutes by an administrative body, long continued in, may sometime have the force of law, has no application here. It is a question of what the ordinance prohibits and what it does not prohibit. But, assuming that it has been the custom of undertakers to prepare bodies at their business establishments and take them to their homes in residential neighborhoods and use their homes as furneral parlors, such custom could not be followed, because it is a violation of the ordinance.

"A custom and usage prevailing in a community or neighborhood cannot be set up as a defense to a prosecution for crime, because such custom and usage cannot operate to supersede a criminal statute, or to overthrow the rules of evidence by which the commission of an offense is proved, even though such custom and usage may have been for a long time acquiesced in by the community in which it prevails." *Wharton's Criminal Law,* 12th Ed., Vol. 1, Sec. 338.

"It is perfectly true that, where there has been a long and unbroken construction given to a statute by the officers, charged with the administration of particular laws, the court will ordinarily assume such construction to have been the correct one; but such an assumption in the present case would require the court to eliminate from the statute the clear language of the act. * * * That this court cannot do; but when the question is presented to it of a laxity in enforcement, or misconception of the intent of the law by administrative officers, whose duty it was to carry out the act of the Legislature, such omission or misconception of clear statutory provisions cannot be allowed to stand in the way of giving to the act of the Legislature the proper interpretation." *Smith v. State,* 134 Md. 473, 480, 107 A. 255, 257; *Bouse v. Hutzler,* 180 Md. 682, at 687, 26 A. 2d 757.

For the reasons given, the plea was bad, and the court was right in sustaining the State's demurrer thereto.

Again, even if the action of the court in sustaining the demurrer to the special plea of the traverser was erroneous (which it was not, but clearly correct) it would not have been reversible error. The traverser waived his right to a jury trial and demanded to be tried before the court. The judge, therefore, sat as a jury and he was the judge of the law and the facts. We have nothing to do with the facts. It is our function to determine if there was reversible error made by the court in any of its rulings. *Quesenbury v. State,* 183 Md. 570, 39 A. 2d 685; *Bright v State,* 183 Md. 308, 38 A. 2d 96; *Foreman v. State,* 182 Md. 415, 35 A. 2d 171; *Meyerson v. State,* 181 Md. 105, 28 A. 2d 833; *Wilson v. State,* 181 Md. 1, 26 A. 2d 770; *Berger v. State,* 179 Md. 410, 20 A. 2d 146.

"The ground upon which the demurrer to the special plea, given above, was sustained, is not disclosed by the record, but the appellee in his brief contends that the plea is defective because it amounts to the general issue plea. The appellee is wrong in this contention, as the plea does not amount to the general issue plea, and if, for

this reason, the court sustained the demurrer, then, in our opinion it committed an error in so doing, but not a reversible error, inasmuch as the defendant under the general issue plea was thereafter permitted to offer in evidence all the facts pleaded in their special plea." *British & Foreign Marine Ins. Co. v Cummings*, 113 Md. 350, at 353, 354, 76 A. 571, 573.

Finding no error at all in the ruling of the learned judge below, the judgment in the case will be affirmed.

*Judgment affirmed, appellant to pay costs.*