Jones et al. *v.* City of Hattiesburg.

In Banc. Nov. 14, 1949.

No. 37222 (42 So. (2d) 717)

492 .

Stanton A. Hall, R. L. Calhoun and Heidelberg & Roberts, for appellants.

**Alfred Moore,** for appellee.

**Hall, J.**

This appeal involves the question of the reasonableness of the action of the governing authorities of the City of Hattiesburg in refusing a building permit for the construction of a warehouse upon the right of way of appellant railroad company, and in determining that such construction would be in violation of the city's zoning ordinance.

The ordinance in question was adopted in 1941. For more than fifty years the railroad company, an interstate carrier, has owned a right of way through the city which at the point here in question is two hundred feet in

width, and over which it has continuously operated its trains and carried on its business. By the ordinance, the property in question and, in fact, practically all the railroad right of way was placed in the residential zone. The railroad company leased to appellant, Jones, a portion of its right of way one hundred and thirty feet in length and sixty-two feet in width upon which he proposed to erect, and applied for a permit to construct, a warehouse building one hundred feet in length and forty feet in width for the storage of freight. The record shows that the property on three sides is in the commercial zone, and the only residential property affected lies to the southeast of the proposed building site; that the railroad right of way has been used for commercial purposes for said period of fifty years, and is still being so used, and has never been used for residential purposes and is not suitable therefor; that the construction of the proposed building on the right of way will add to the use of the premises as railroad property in that its revenue will be increased by the movement of freight to said location over its tracks, and unless the building is erected, the property will remain idle and useless for any purpose other than commercial.

In the case of Fitzhugh v. City of Jackson, 132 Miss. 585, 97 So. 190, 33 A. L. R. 279, decided in 1923, it was held that a city zoning law was void and could not be upheld under the general police powers granted to a municipality. Thereafter, by Chapter 308, Laws of 1926, as now amended, Sections 3590-3597, Mississippi Code of 1942, the Legislature authorized municipalities to enact zoning ordinances, and pursuant to that authority a subsequent zoning ordinance of the City of Jackson was upheld in City of Jackson v. McPherson, 162 Miss. 164, 138 So. 604, 605, but in that case it was held ▮▮ that the determination of the boundaries of the various zones is vested by law in the city commissioners, "and, unless the court can say that their action was unreasonable and arbitrary, there is no proper power in the court

to interfere." Thus, there was preserved the holding of this Court in Bradley v. City of Jackson, 153 Miss. 136, 119 So. 811, 816, where in dealing with municipal ordinances and regulations, it was said, █ "All such ordinances and regulations, however, must be reasonable, otherwise they will be void and unenforceable; and the question of their reasonableness is a judicial question."

The ordinance now before us sets up a complete plan of zoning for the City of Hattiesburg, dividing its area into three districts,—residential, commercial and industrial. Section 8 of the ordinance, omitting inapplicable parts, provides: "Any lawful . . . use of a . . . premises at the time of the passage of this ordinance or any amendment thereto may be continued, although the use of such . . . land does not conform to the regulations of the district in which such use is maintained. . . . No such non-conforming use may be changed to another non-conforming use that is not of the same classification or of a classification which is no more objectionable to the neighborhood." Section 10 of the ordinance defines "Non-conforming use" as "A use that does not comply with the regulations of this ordinance for the district in which it is located."

There is nothing vicious or unreasonable in the ordinance itself and we find no occasion to challenge its validity, but █ the problem in this case arises out of the interpretation which the governing authorities of the city have placed upon it. In matters of this kind, each and every case must be determined in view of the particular facts shown. It is admitted in the record before us that the entire right of way of appellant railroad was devoted solely to commercial purposes when the ordinance was adopted, and has never yet ceased to be used for such purposes, and that it is not suited for residential purposes. Under the very terms of the ordinance, a continued non-conforming use of the property was authorized. It could not be effectively argued that under the quoted provisions of the ordinance the rail-

road company could not cover the area in question with side tracks and keep boxcars parked thereon at all times. The construction and operation of a warehouse cannot be any more objectionable than the operation of trains with their attendant noise, vibration, smoke and dirt, or the switching and placing of railroad cars upon the property. ▮▮ ▮ The location of a warehouse at this point, which, for such a long period, has been devoted exclusively to commercial purposes, does not bear any such substantial relation to the public health, safety, morals or general welfare, as to prevent the continued use of the property for purely commercial purposes.

In the case of Weir v. Standard Oil Co., et al., 136 Miss. 205, 101 So. 290, 291 the facts were that in 1869 the predecessor of Louisville & Nashville Railroad Company obtained by eminent domain proceedings against the father of plaintiffs a strip of land for right of way and depot purposes six hundred and fifty feet wide in the town of Bay St. Louis. In 1891, the company leased a part of this right of way to Standard Oil Company, which lease was renewed from time to time, and the oil company erected a warehouse and oil storage tanks thereon for the handling of petroleum products shipped over the railroad. The plaintiffs brought suit to recover the land so leased and alleged that the property was not being used for railroad purposes, and that there had been an abandonment of the property by the railroad and a misuse of the easement acquired by the eminent domain proceeding. In passing upon the matter this Court said:

"The decisive question presented for a decision is whether or not the leasing of the land to the Standard Oil Company and the use thereof, under the circumstances and in the manner stated, was a use consistent with the purposes for which the right of way was acquired, or whether it was a use so foreign to railroad purposes as to constitute an abandonment or an additional servi-

tude not permissible under the right of title acquired for railroad purposes by condemnation or otherwise.

"As to whether certain uses of a railroad right of way are inconsistent with the purposes for which it was acquired, there is some conflict in the authorities; but the authorities generally support the conclusion that a railroad company may make any use of the land acquired by it for a right of way, which directly or indirectly contributes to the safe, economic, and efficient operation of the road, and which does not interfere with the rights of property pertaining to the adjacent lands. As said by Justice Brewer in Western Union Tel. Co. v. Rich, 19 Kan. 517, 27 Am. Rep. 159:

" 'The railroad company may use its right of way not merely for its track, but for any other building or erection which reasonably tends to facilitate its business of transporting freight and passengers, and by such use in no manner transcends the purposes and extent of the easement, or exposes itself to any claim for additional damages to the original landowner.'

"In the consideration of the question of the rights of a railroad company in the use of its right of way it has been held that, if the company, in order to facilitate its business, could have erected similar structures and put the land to a similar use, it could license others to do the same thing for the same object. Grand Trunk Ry. Co. v. Richardson, 1 Otto 454, 91 U. S. 454, 23 L. Ed. 356; Illinois Cent. R. Co. v. Wathen, 17 Ill. App. 582.

"That the railroad company would have had the right to have erected and used the oil tanks and other structures for the purpose of facilitating the unloading of its tank cars and the delivery of oil and oil products would hardly be questioned. . . . We are of the opinion that the construction and maintenance on the right of way of these tanks and other facilities for the handling of oil reasonably tends to facilitate its business of transporting this character of freight and does not constitute a misuse of the easement which the railroad acquired in the land."

While the Weir case did not involve a zoning ordinance, the principle therein announced that a railroad company may use its right of way not merely for its track but for any other building or structure which reasonably tends to facilitate its business is, in our opinion, applicable to the facts presented by the record here.

The case of Nectow v. City of Cambridge, 277 U. S. 183, 48 S. Ct. 447, 448, 72 L. Ed. 842, involved a zoning ordinance where, as here, it was shown that no practical use could be made of the land for residential purposes, and that the land on two sides was used for industrial and railroad purposes, but it was nevertheless placed in a residential zone by the city ordinance. The Supreme Court of the United States said: "The governmental power to interfere by zoning regulations with the general rights of the landowner by restricting the character of his use, is not unlimited, and, other questions aside, such restriction cannot be imposed if it does not bear a substantial relation to the public health, safety, morals, or general welfare."

In Chicago, Rock Island & Pacific Railway Company v. United States, et al., 284 U. S. 80, 52 S. Ct. 87, 92, 76 L. Ed. 177, it was held that "The use of railroad property is subject to public regulation, but a regulation which is so arbitrary and unreasonable as to become an infringement upon the right of ownership constitutes a violation of the due process of law clause of the Fifth Amendment."

██ ██ We are of the opinion that in the case at bar Section 8 of the zoning ordinance clearly authorizes the continued use of the property in question for commercial purposes provided the purpose is no more objectionable than the principal business of operating a railroad already conducted thereon before adoption of the ordinance, that ██ ██ the construction and maintenance of a warehouse for the reception of freight moving over the railroad is a reasonable use of the right of way in facilitating the company's principal business and is no more

objectionable than the operation of trains, and that the action of the city authorities in denying such use of the property is an unreasonable and arbitrary interpretation of the zoning ordinance which tends to deprive the company of its property and the use thereof, contrary to the Fifth and Fourteenth Amendments to the Constitution of the United States, and Sections 14 and 17 of the Mississippi Constitution of 1890. The judgment of the lower court, which affirmed the action of the governing authorities of the city in denying a permit for the erection and maintenance of the warehouse in question, upon the sole ground that said property according to the zoning ordinance is in a residential district, is accordingly hereby reversed, and judgment will be here entered directing the issuance of the permit.

Reversed and judgment here.