578 So.2d 275 (1991)
COLUMBUS & GREENVILLE RAILWAY COMPANY
v.
Susan M. SCALES, Gerald J. Montgomery, Jr., Susan Montgomery, Tom R. Pitts, Joan T. Pitts, and Dexter Walcott.
No. 90-IA-0423.
Supreme Court of Mississippi.
April 10, 1991.
Arnold F. Gwin, Greenwood, for appellants.
James Y. Dale, Whittington, Brock, Swayze & Dale, Greenwood, for appellee.
Before HAWKINS, P.J., and PITTMAN and BANKS, JJ.
HAWKINS, Presiding Justice, for the Court:
This appeal involves the effect, if any, a zoning ordinance of Leflore County has upon a railroad.
We hold on the first of the two questions presented by this appeal that the board of supervisors of the county had the statutory *276 authority to enact a zoning ordinance affecting the Columbus and Greenville Railway Company's railroad in that county, subject to a reasonableness test that recognizes a railroad is a common carrier.
For the reasons stated, we decline to address the second issue, whether or not the county ordinance did in fact apply to the railroad.

FACTS
On March 3, 1982, the Leflore County board of supervisors adopted a county-wide zoning ordinance covering all land in the county outside corporate limits.
On October 10, 1989, Susan M. Scales and over twenty other plaintiffs filed an amended complaint in the chancery court of Leflore County against the Columbus & Greenville Railway Company (C & G). Plaintiffs live just West of the corporate limits of Greenwood on River Road Extended which runs along the south banks of the Yazoo River.
The defendant C & G operates a railroad across the state from Columbus to Greenville and is entirely intra-state. Just west of the corporate limits of Greenwood, and running westerly, the railroad takes a sharp left turn and runs for a short distance in a southwest direction. Just into this southwest turn, after being awarded a federal grant for the purpose, the defendant in 1989 commenced enlarging its single track to include two additional tracks to be used for switching cars. The railroad is on a one-hundred-foot-wide right-of-way, and the additional tracks would be constructed within this right-of-way. None of the plaintiffs' lots abut the railroad right-of-way. This portion of the railroad is separated from their residences by a half-mile of open cotton fields. Plaintiffs' property is North of the railroad.
The complaint alleges the land through which the railroad travels is zoned agricultural, and that the defendant was in violation of the zoning ordinance in adding the switching tracks, and that no permit had been granted by the county board to construct them.
The complaint alleges that construction of the tracks also violated federal and state environmental standards, and funding for it violated due process. Further, that the switching yard would create a public and private nuisance, an "attractive nuisance" to children in the area, hazardous waste storage, and would bring in "undesirables into the area as result of overnight parking of trains in the area immediately south of plaintiffs' homes, and in other respects to be shown."
In its answer filed December 1, C & G's first defense was that the complaint failed to state a cause of action, and moved to dismiss.
We must surmise there was a further motion filed to dismiss that portion of the complaint alleging a zoning ordinance violation, because on April 7, 1990, the special chancellor entered an order overruling this motion, and it is this order upon which this appeal is based.
The order first recites that this motion is dismissed "on the ground that the Court is of the opinion that the Leflore County zoning ordinance does apply to the defendant in this case." The order further recites that the chancellor was of the opinion that a substantial basis for a difference of opinion existed on the "question of law as to whether or not the Leflore County zoning ordinance does apply to the railroad," and that "appellate resolution of this issue at law may materially advance the termination of the litigation in this case." He accordingly granted an interlocutory appeal, recommending that it be expedited.
On May 22, 1990, this Court, with two Justices dissenting, granted the petition for interlocutory appeal, and expedited briefing schedule.
The motion to dismiss upon which the chancellor ruled was only that portion seeking relief predicated upon a violation of the zoning ordinance. Whether or not the remaining portion of the complaint stated a cause of action was not addressed by the chancellor nor do we.
The appellant C & G's brief raises two issues, the first being whether or not the board of supervisors had the statutory authority *277 to adopt a zoning ordinance restricting use by a railroad of property owned by it when the ordinance was adopted. Does a board of supervisors have the legal authority to make a zoning ordinance apply to a common carrier railroad? The second issue is whether this particular zoning ordinance applies to the C & G railroad.
We hold that in a very limited way a common carrier railroad may be subject to local zoning regulations. For the reasons set forth, we decline on this appeal to address the second issue.

I. STATUTORY AUTHORITY
A common carrier railroad is an enterprise on which many municipalities and counties depend. Its successful, efficient operation has an economic impact throughout the state, and most especially on communities through which it runs.[1]
Jones v. City of Hattiesburg, 207 Miss. 491, 42 So.2d 717 (1949), answers the question of the county's authority to pass a zoning ordinance affecting a railroad right-of-way. This Court held, in interpreting §§ 3590-3597 of the Mississippi Code of 1942, that the city of Hattiesburg had the statutory authority to pass a zoning ordinance affecting railroad property. Id. Miss. Code Ann. § 17-1-3 (1972) gives the same authority to a county board of supervisors that § 3590 of the 1942 code granted municipalities. Also, Miss. Code Ann. § 17-1-15 (1972). We accordingly hold that when the zoning ordinance was adopted by the board of supervisors of Leflore County the county had statutory authority to make provisions affecting use of railroad property.
Jones is also authority for the principle that "a railroad company may use its right-of-way not merely for its track but for any other building or structure which reasonably tends to facilitate its business." 207 Miss. at 498, 42 So.2d at 719. And, we struck as unreasonable and arbitrary a refusal by the city to grant the railroad and its lessee a building permit to construct a warehouse on the railroad right-of-way in a residentially zoned area. Jones, 207 Miss. at 550, 42 So.2d at 499. For the reasons hereinafter noted, we do not address whether the zoning ordinance itself applies to railroads. At the same time, from the record before us, we are constrained to observe, in fairness to all parties, that on remand if it is contended in the chancery court that the zoning ordinance does apply, then under our holding in Jones the county zoning authorities will be hard pressed to deny a permit for the construction of these additional tracks. The switching tracks do not appear to cross any highway, and are in a countryside of open farmland a half mile from the nearest residence.
Some states by statute vest exclusive authority in public service commissions or their equivalent to regulate railroads. Thus, in Commonwealth v. Delaware & Hudson Railway Co., 19 Pa.Commw. 59, 339 A.2d 155 (1975), a case in which a railway company had been convicted of violating a local zoning ordinance because it had constructed an additional railroad track without obtaining a building permit, the Pennsylvania Commonwealth Court held:
The clear intent of Duquesne [Light Co. v. Upper St. Clair, 377 Pa. 323, 105 A.2d 287 (1954)] supra, and the many cases cited therein is to uphold the proposition that public utilities are to be regulated exclusively by an agency of the Commonwealth with state-wide jurisdiction rather than by a myriad of local governments with different regulations.
"If each county were to pronounce its own regulation and control over electric wires, pipe lines and oil lines, the conveyors of power and fuel could become so twisted and knotted as to affect adversely the welfare of the entire state. It is for that reason that the Legislature has vested in the Public Utility Commission exclusive authority over the complex and technical service and engineering questions arising in the location, construction and maintenance *278 of all public utilities facilities... ." (Citations omitted.) Chester County v. Philadelphia Electric Company, 420 Pa. 422, 425-26, 218 A.2d 331, 333 (1966). (Parenthesis original)
This reasoning is equally applicable to railroads. Therefore, to the extent that Section 619 of the Pennsylvania Municipalities Planning Code gives any authority to local governments to regulate public utilities, that authority must be strictly limited to the express statutory language. The Pennsylvania Municipalities Planning Code itself states in Section 1202, 53 P.S. § 11202 that it "shall not repeal or modify any of the provisions of the `Public Utility Law'... ."
We hold that the word "building" in Section 619 of the Pennsylvania Municipalities Planning Code does not include railroad tracks as it does not include transmission lines of power companies... .
Commonwealth, 339 A.2d at 157. The Pennsylvania court also noted that the public utility law of that state gave the municipality a forum to voice its objection to any such construction before that state's commission. Id. See also, Burlington Out Now v. Burlington Northern, Inc., 532 P.2d 936, 938 (Idaho 1975).
Massachusetts and New Jersey give their departments of public utilities authority to exempt a railroad from the provisions of a local zoning ordinance. Town of Westborough v. Department of Public Utilities, 358 Mass. 716, 267 N.E.2d 110 (1971); New York Central R. Co. v. Department of Public Utilities, 347 Mass. 586, 199 N.E.2d 319 (1964); N.Y. Central v. Ridgefield, 84 N.J. Super. 85, 201 A.2d 67 (1964).
Miss. Code Ann. §§ 77-9-1  41; 77-1-23 and 77-1-49; 77-9-257; and 77-9-265 of the 1972 Code vest in the public service commission of this state authority to supervise and regulate common carrier railroads. We find no specific statutory language vesting authority in the commission as to whether construction of a switching yard in the open countryside requires its approval. Miss. Code Ann. § 77-9-265 gives the commission jurisdiction where a switching yard affects traffic on a public street or highway.
We likewise note that Miss. Code Ann. §§ 77-9-141  193 (1972) grant railroad corporations broad powers, including construction of one or more tracks, Miss. Code Ann. § 77-9-147, and of eminent domain, Miss. Code Ann. § 77-9-169.
While the line of authority between the local authorities and the public service commission's regulation of railroads is not specifically defined by statute, at least as to the construction of an addition to railroad tracks, we have no difficulty in gleaning a legislative intent that our public service commission has general jurisdiction over common carrier railroads with an official responsibility to the public to see that railroads are operated safely, efficiently and for the public's benefit. This responsibility which the commission has to the entire state manifestly cannot be frustrated by any local ordinance or order, whether by a city or county. Hence we underscore what is at least tacitly clear from Jones v. Hattiesburg: any reasonableness test of a zoning ordinance which applies to a railroad must take into account the obligation of the company to serve efficiently and economically all sections of the state dependent on it for services.

II. THE ZONING ORDINANCE
What purports to be a copy of the official zoning ordinance of Leflore County adopted March 3, 1982, is in the record. We do not know if it is the complete ordinance or not. The ordinance never mentions the word "railroad," or "common carrier." Section 400 of the ordinance provides:
SECTION 400. USES PERMITTED IN ALL DISTRICTS
1. Any use or facility necessary for the operation of any political subdivision of local, state or Federal Government, including public and private utilities. Locations for electrical transformers, gas regulator stations, sewage treatment facilities and similar uses shall be approved by the Planning *279 Commission and the Board of Supervisors prior to installation.
2. Public and Semi-Public uses are permitted in all district[s]; provided however, that the locations for such facilities are approved by the Planning Commission prior to construction. Such facilities shall include, but not be limited to, public and private schools, churches, public parks and playgrounds.
3. Agricultural uses.
C & G argues that this section authorizes it to construct the extra tracks unaffected by the ordinances. The plaintiffs argue that the railroad is not a public or private utility, and therefore does not come under the provisions of the section. Both make plausible arguments supporting their own interpretation.
From this record it appears that neither the local zoning commission (if one exists) nor the board of supervisors of Leflore County has taken any official position regarding these additional tracks. Zoning ordinances are essentially legislative functions with limited judicial review. Luter v. Hammon, 529 So.2d 625, 628 (Miss. 1988); Robinson Industries v. City of Pearl, 335 So.2d 892, 895 (Miss. 1976); City of Jackson v. Ridgway, 261 So.2d 458, 460 (Miss. 1972).
This is not a case where the meaning, intent and purpose of the zoning ordinance is clear and unequivocal. Robinson v. Indianola Mun. Separate Sch. Dist., 467 So.2d 911, 914 (Miss. 1985); Ullrich v. State, 186 Md. 353, 358, 46 A.2d 637, 640, or its violation beyond dispute. To the contrary, credible arguments can be made for either side's position. Yet no official position has ever been taken by the local zoning authority. The cardinal rule in construction of zoning ordinances is to give effect to the intent of the lawmaking body. Hutchinson v. Board of Zoning Appeals of Stratford, 100 A.2d 839, 841 (Conn. 1953); City of Rome v. Shadyside Memorial Gardens, Inc., 93 Ga. App. 759, 92 S.E.2d 734, 736 (1956); City of Buffalo v. Roadway Transit Co., 303 N.Y. 453, 104 N.E.2d 96, 98 (1952). In construing a zoning ordinance, unless manifestly unreasonable, great weight should be given to the construction placed upon the words by the local authorities. Drennen v. Mason, 133 So. 689, 691 (Ala. 1931); Kordick Plumbing and Heating Co. v. Sarcone, 190 N.W.2d 115, 118 (Iowa 1971). Daniel D. Rappa, Inc. v. Engelhardt, 256 A.2d 744, 746 (Del. 1969).
Insofar as this record shows, the board of supervisors of Leflore County has never been called upon to interpret this zoning ordinance and officially declare whether or not it applies to railroads. There is enough uncertainty and ambiguity about this ordinance that if the board of supervisors by resolution declared it never intended it to affect railroads any court would be hard put indeed to disregard that interpretation as unreasonable. In Napa Valley Electric Co. v. Calistoga Electric Co., 38 Cal. App. 477, 176 P. 699, 700 (1918), that court held:
A court of equity will never assume jurisdiction to prepare a decree dependent for its efficacy on the approval or rejection of some other co-ordinate or inferior board or tribunal, but only when the court can enforce its decree.
Since the plaintiffs contended the C & G had violated the zoning ordinance, they should first have called upon the local commission or board of supervisors, or both, to enforce it. The county is under a duty to enforce its own ordinance. 101 C.J.S. Zoning and Land Planning, § 334. Failing in that, they could have sought by mandamus to force the county to enforce the ordinance. 101A C.J.S., § 335. And, at the very least the board of supervisors of Leflore County is an indispensable party to resolution of this action in chancery court. Rule 19, M.R.C.P.
Any attempt to interpret and then enforce this zoning ordinance in the absence of any official positions by the board of supervisors of Leflore County is putting *280 the cart before the horse. We therefore eschew this endeavor as should the chancery court. Upon remand the board of supervisors should be made a party to this action.
REVERSED AND REMANDED FOR PROCEEDINGS CONSISTENT WITH THIS OPINION.
ROY NOBLE LEE, C.J., DAN M. LEE, P.J., and ROBERTSON, SULLIVAN, PITTMAN, BANKS and McRAE, JJ., concur.
PRATHER, J., not participating.
NOTES
[1] Transportation by railroad is clearly the most energy efficient transportation on wheels. It may some day be recognized that the wholesale abandonment of railroad lines, which this State has witnessed in the past two decades, was an economic catastrophe.