COLEMAN, JUSTICE,
CONCURRING IN PART AND IN RESULT:
¶ 38. I concur with the majority’s analysis of today’s case with the exception that I am of the opinion that our standard of review when interpreting an existing zoning ordinance should be de novo. However, even under a de novo standard of review, I agree with the result reached by the majority, that is, that the ordinance in question does not authorize Hatfield to keep fowl on his property.
I. The Court’s standard of review as to the interpretation of the pertinent zoning ordinance should be de novo.
¶ 39. Hatfield contends that -the interpretation of the Madison County Ordinance 601 is a question of law and should be subject to a rife novo standard of review. Although we have held, in cases discussed moré fully below, that the courts should grant deference to local legislative bodies in their interpretations of ordinances, I disagree for two reasons. First, an overwhelming majority of our sistér states have held that reviews of interpretations of zoning ordinances are questions of law, and we consistently have maintained— even in zoning cases—that the standard of review for questions of law is de novo. Second, because the interpretation of ordinances is a question of law, .sharing the authority to interpret statutes and ordinances with another branch of government violates Article I, Section 2 of the Mississippi Constitution of 1890, which forbids the sharing of power between the three branches of state government. Because our cases in which we hold that deference should be afforded to the local' legislative body in interpreting ordinances create conflict with the usual de novo standard of review applicable to questions of law and, further, indicate that the Courts have ceded judicial power to other branches of government in violation of Section 2 of the Constitution of 1890, I would hold that henceforth we will review the interpretation of zoning ordinances rife novo. Of necessity, I would further overrule cases that indicate that the courts should give deference to the local zoning authorities when it comes to interpreting existing zoning ordinances.
A. The interpretation of zoning ordinances is a question of law.
¶ 40. I agree with the majority when it writes that, even in zoning cases, questions of law are reviewed de novo. (Maj. Op. at ¶ 9) (citing, inter alia, Drews v. City of *26 Hattiesburg, 904 So.2d 138, 140 (¶ 5) (Miss. 2005)). However, I depart here from the majority, because the interpretation of ordinances presents a question of law. I am persuaded by authority from nearly half of our states—and one commonwealth—that have so described it. See, e.g,, Flat Rock Wind, LLC v. Rush Cty. Area Bd. of Zoning Appeals, 70 N.E.3d 848, 857 (¶23) (Ind. App. 2017) (“[A] review of the interpretation of a zoning ordinance is a question of law.”); River’s Edge Funeral Chapel and Crematory, Inc. v. Zoning Hearing Bd. of Tullytawn Borough, 150 A.3d 132, 139 (Pa. Commw. Ct, 2016) (“Whether a proposed use falls within a given zoning ordinance categorization is a question of law.”); Kobyluck Bros., LLC v. Planning and Zoning Comm’n of Town of Waterford, 167 Conm.App. 383, 391, 142 A.3d 1236, 1241 (Conn. App. Ct. 2016) (“Although the position of the municipal land use agency is entitled to some deference .,., the interpretation of provisions in the ordinance is nevertheless a question of law for the court....”); City of Dunwoody v. Discovery Practice Mgmt., Inc., 338 Ga. App. 135, 139, 789 S.E.2d 386, 390 (Ga. Ct. App. 2016) (“The construction of a zoning ordinance is a question of law for the courts.”); RDNT, LLC v. City of Bloomington, 861 N.W.2d 71, 75 (Minn. 2015) (acknowledging that the interpretation of an existing ordinance is a question of law subject to de novo review); Drummey v. Town of Falmouth, 87 Mass.App.Ct. 127, 128, 25 N.E.3d 907, 908 (Mass. App. Ct. 2015) (“Interpretation of the town’s by-law raises a question of law.”); Columbro v. Lebanon Twp. Zoning Bd. of Adjustment, 424 N.J.Super. 501, 508, 38 A.3d 675, 680 (N.J. Super. Ct. App. Div. 2012) (“[T]he the interpretation of an ordinance is primarily a question of law.”); Sutton v. Town of Gilford, 160 N.H. 43, 57, 992 A.2d 709, 721 (2010) (“The construction of the terms of a zoning ordinance is a question of law, which we review de novo.”);- Aydelott v. City of Portland, 990. A.2d 1024, 1026 (¶ 10) (Me. 2010) (“The interpretation of a local ordinance is a question of law, and we review that determination de novo.”);' City of Mosier v. Hood River Sand, Gravel and Ready-Mix, Inc., 206 Or.App. 292, 302, 136 P.3d 1160, 1167 (Or. Ct. App. 2006) (acknowledging that Oregon appellate courts review the construction of ordinances as a matter of law); Williams v. Dep’t of Bldg. Dev. Serv. of City of Springfield, 192 S.W.3d 545, 547 (Mo. Ct. App. 2006) (“Although the interpretation of a city ordinance is a question of law, the interpretation given to the language by the body in charge of its enactment and application is also entitled to great weight.”); Smith v. Bernalillo Cty., 137 N.M. 280, 285, 110 P.3d 496, 501 (2005) (“Interpretation of a zoning ordinance is a matter of law that we review de novo using the same rules of construction that apply to statutes.”); Heilker v. Zoning Bd. of Appeals for City of Beaufort, 346 S.C. 401, 552 S.E.2d 42 (2001), Brandon Charter Twp. v. Tippett, 241 Mich.App. 417, 421, 616 N.W.2d 243, 245 (2000) (stating that because party asked the appellate court to interpret a zoning ordinance, he presented the court “with a question of law subject to review de novo.”); Kirkpatrick v. Vill. Council for Vill. of Pinehurst, 138 N.C.App. 79, 85, 530 S.E.2d 338, 342 (2000) (“[Pjroper interpretation of a zoning ordinance is a question of law.”); Larsen v. Town of Colton, 94 Wash.App. 383, 394, 973 P.2d 1066, 1072 (1999) (“Interpretation of a zoning ordinance is a question of law.”); Schrank v. Pennington Cty. Bd. of Comm’rs, 584 N.W.2d 680, 683 (S.D. 1998) (“The meaning of terms in a zoning regulation is a matter of law for the court.”); Lauridsen v. City of Okoboji Bd. of Adjustment, 554 N.W.2d 541, 543 (Iowa 1996) (“Although we give deference to the board of adjustment’s interpretation of its city’s *27 zoning ordinances, final construction and interpretation of zoning ordinances is a question of law for us to decide.”); Warren v. Zoning Bd. of Appeals of City of Fairfield, 255 Ill.App.3d 482, 486, 625 N.E.2d 1213, 1216, 193 Ill.Dec. 92, 94 (Ill. App. Ct. 1994) (“The construction of a zoning ordinance is a question of law, and the reviewing court may make an independent determination of questions of law.”); Ex parte Norwood, 615 So.2d 1210, 1212 (Ala. Civ. App. 1992) (“Construction of a zoning ordinance is a question of law....”); Kaiser v. Western R/C Flyers, Inc., 239 Neb. 624, 628, 477 N.W.2d 557, 560 (1991) (“The interpretation of a zoning ordinance presents a question of law.... ”); Hambleton v. Friedmann, 117 Wis. 2d 460, 461, 344 N.W.2d 212, 213 (Wis. Ct. App. 1984) (“The meaning of an ordinance is a question of law that we independently decide.”); Dampman v. City of Baltimore, 231 Md. 280, 284, 189 A.2d 631, 633 (1963) (“It thus appears that this case presents substantially no conflict as to fact but merely a question of law involving the construction of the zoning ordinance with reference to special exceptions.”); City of Norwalk v. Auction City, Inc., 186 Cal. App.2d 287, 290, 8 Cal.Rptr. 781, 783 (Cal. Dist. Ct. App. 1960) (“The question of the construction of the ordinance is one of law.”); Mills v. Brown, 159 Tex. 110, 114, 316 S.W.2d 720, 723 (1958) (“The same rules apply to the construction of municipal ordinances as to the construction of statutes.”).
¶ 41. To be clear, some of the courts listed above give varying degrees of deference in interpreting zoning ordinances despite categorizing the interpretation as a matter of law. However, Mississippi courts should review them de novo. Again, in cases involving the interpretation of zoning ordinances, questions of law are reviewed de novo. The interpretation of an existing ordinance is a question of law, therefore the Court should review it de novo rather than with deference.
B. The interpretation of the law is a constitutional function of the courts, and sharing the power with other branches by giving deference to another branch’s interpretation of the law violates the separation of powers under the Mississippi .Constitution of 1890.
¶42. I agree with Hatfield when he urges the Court to examine the ordinance at issue de novo for an additional reason. The Mississippi Constitution of 1890 draws stark lines between the powers of the three branches of government. Section 1 reads, “The powers of the government of the State of Mississippi shall be divided into three distinct departments, and each of them confided to a separate magistracy, to-wit: 'those which are legislative to one, those which are judicial to another, and those which are executive to another.” (Emphasis added.) Following closely on its heels, Section 2 provides as follows:
No person or collection of persons, being one or belonging to one of these departments, shall exercise any power properly belonging to either of the others. The acceptance of an office in either of said departments shall, of itself, and at once, vacate any and all offices held by the person so accepting in either of the other departments.
To be sure, we have held that in certain limited situations, we have no authority under the Mississippi Constitution to interpret laws when the Constitution authorizes another branch to interpret those laws. See, e.g., Gunn v. Hughes, 210 So.3d 969 (Miss. 2017) (holding that the courts lack the constitutional authority to intervene in internal legislative procedure even when the procedures in question are prescribed by the Constitution);- In re Hooker, 87 So.3d 401 (Miss. 2012) (holding that a fa--cially valid pardon would not be set aside by .the courts on a claim that a constitu *28 tional procedural requirement had not been met). However, the existence of the exceptions does not change the general reality that it is the function of the courts to interpret the law.
¶ 43. Our cases make it clear. “The ultimate authority and responsibility to interpret the law, including statutes, rests with this Court.” Queen City Nursing Ctr., Inc, v. Miss. State Dep’t of Health, 80 So.3d 73, 84 (¶ 28) (Miss. 2011); see also Miss. State and Sch. Em/p. Life and Health Plan v. KCC, Inc., 108 So.3d 932, 939 (¶20) (Miss. 2013). Courts have the duty to determine what statutes provide. Lawson v. Honeywell Int’l, Inc., 75 So.3d 1024, 1027 (¶7) (Miss. 2011). Mississippi’s Constitution requires a “strict separation of powers.” Gunn, 210 So.3d at 972 (¶-13). If, as we held in cases such as Gunn, Hooker, and Hunt v. Wright, 70 Miss. 298, 11 So. 608 (1892), we must wholly refrain from exercising powers granted only to another branch of government, then surely we must embrace the inverse proposition and wholly exercise those powers and responsibilities conferred upon the courts. We cannot do so while we also defer the interpretation of statutes—or ordinances—to other branches of government. Accordingly, I would hold that the interpretation of positive pronouncements of law, such as statutes and ordinances, is a question to be reviewed de novo.
C. Because our cases in which we hold that deference should be afforded to the local legislative body in interpreting ordinances create a conflict with our continued claim that issues of law are review de novo in zoning cases and conflict with the separation of powers under Mississippi’s Constitution, we should overrule the cases affording deference in interpretation of questions of law.
¶ 44. The majority cites, inter alia, Drews v. City of Hattiesburg, 904 So.2d 138 (Miss. 2005), to establish a deferential standard of review for the interpretation of the ordinance at issue. (Maj. Op. at ¶ 10). In Drews, the question presented was not one of interpreting an ordinance to determine whether a proposed use of land was allowed or not, but whether the Hatties-burg Board of Adjustments acted properly when granting zoning variances. Id. at 139-140 (¶ 1). It is worth noting, however, that the Drews Court acknowledged that questions of law would be reviewed de novo. Thomas v. Board of Supervisors of Panola County, 45 So.3d 1173 (Miss. 2010), which the majority cites for the proposition that zoning issue are of a legislative nature, likewise concerned a decision by a zoning authority to zone land for one use over another. I take no issue whatsoever with affording deference to local authorities when making such decisions.
¶45. However, another line of cases affords deference to the local zoning agencies in the interpretation of zoning ordinances. For example, the Board of Supervisors relies on Roundstone Development, LLC v. City of Natchez, 105 So.3d 317 (Miss. 2013), in which one of the issues before the -court was whether an affordable-housing subdivision could be developed under then-existing zoning ordinances. Id. at 320 (¶ 11). Relying on Hall v. City of Ridgeland, 37 So.3d 25 (Miss. 2010), cited by the majority, the Roundstone Court reviewed the City of Natchez’s interpretation of its own zoning ordinance by giving it “great weight” and considering whether the city’s interpretation was “manifestly unreasonable.”
¶ 46. The Hall Court, in turn, relied on Columbus & Greenville Railway Company v. Scales, 578 So.2d 275 (Miss. 1991), in which can be found the genesis of our deferential review of the zoning authority’s *29 interpretation of a zoning ordinance. At issue in Scales was whether a local zoning ordinance affected a railroad’s attempts to build additional tracks. The Scales Court relied on three cases from other jurisdictions in writing that courts should defer to local authorities’ interpretation of zoning ordinances: Drennen v. Mason, 222 Ala. 652, 133 So. 689, 691 (1931); Kordick Plumbing and Heating Co. v. Sarcone, 190 N.W.2d 115, 118 (Iowa 1971); and Daniel D. Rappa, Inc. v. Engelhardt, 256 A.2d 744, 746 (Del. 1969). Interestingly, the Scales Court’s adoption of the deferential standard was dicta-, in the very next paragraph the Court noted that “the board of supervisors of Leflore County has never been called upon to interpret this zoning ordinance and officially declare whether or not it applies to railroads.” Scales, 578 So.2d at 279. Nevertheless, the Court has in fact given deference to zoning authorities’ interpretation in later cases such as Roundstone and Hall. In doing so, the Court has at the least created a conflict within our caseslaw with the de novo standard of review for questions of law and, at most, ceded judicial powers to other branches of government in violation of Section 2 of the Mississippi Constitution. Accordingly, I would hold that the standard of review when interpreting existing zoning ordinances is de novo, and I would overrule cases that hold otherwise.
II. The plain language of the zoning ordinance does not authorize the keeping of fowl.
¶ 47. Reviewing the residential zoning ordinance de novo, rather than for arbitrariness, I nevertheless agree with the result reached by the majority and the lower court. Section 601(D) of Article VI of the Zoning Ordinance of Madison County, Mississippi, which' is applicable to Hatfield’s property, allows the “[bjreeding, raising, and feeding of grazing livestock (i.e., horses, cattle, sheep, goats, mules, etc.), provided that each such animal herein defined as “grazing livestock” shall be kept on a trad or lot of one ■ (1) acre of land or greater....”
¶ 48. Although the majority employs a different standard of review, I agree with its reasoning regarding the meaning of the words used in the ordinance. Although Hatfield cites a dictionary definition of the word livestock that includes poultry as an example, not all definitions do. For example, one dictionary defines the term livestock as “the horses, cattle, sheep, and other useful animals kept or raised on a farm or ranch.” Livestock, Random House Webster’s Unabridged Dictionary (2d ed. 2001). While the quoted definition does not explicitly exclude fowl, the focus matches that of the examples listed in the ordinance in that the examples are of four-legged, grass-eating mammals commonly thought of as pastured animals. The definition of the word grazing continues the theme. Grazing is defined as “to feed on growing grass and pasturage, as do cattle, sheep, etc.” Grazing, Random House Webster’s Unabridged Dictionary (2d ed. 2001). Also, the Board of Supervisors chose to preface its list of examples with “ie.,” which means “that is.” I.e., Random House Webster’s Unabridged Dictionary (2d ed. 2001). It is a more restrictive choice than the common alternative, e.g., which means “for example.” E.g., Random House Webster’s Unabridged Dictionary (2d ed. 2001). In choosing it, and then listing—as the majority points out—four-legged mammals, the Board evidenced the intent not to include fowl. Finally, Hatfield argues that the use of “etc.” at the end of the list of animals opens the definition of grazing livestock to fowl. While he is correct that the use of et cetera indicates the list is not exhaustive, the phrase denotes “more of the same sort, or class.... ” Et cetera, *30 Random House Webster's Unabridged Dictionary (2d ed. 2001). I agree with the majority that fowl are not of the same sort of class .as the animals listed in the Board’s definition of grazing livestock.
¶ 49. Pursuant to the foregoing, I concur with the majority as to every issue except, the standard of review for interpreting ordinances. However, even if viewed de novo, I am of the opinion that the ordinance in question does not authorize Hatfield to keep fowl on his property in Madison County. Accordingly and with respect I concur in part and in the result.
DICKINSON, P.J., AND KITCHENS, J., JOIN THIS OPINION. .