NOTICE:  All slip opinions and orders are subject to formal
revision and are superseded by the advance sheets and bound
volumes of the Official Reports.  If you find a typographical
error or other formal error, please notify the Reporter of
Decisions, Supreme Judicial Court, John Adams Courthouse, 1
Pemberton Square, Suite 2500, Boston, MA, 02108-1750; (617) 557-
1030; SJCReporter@sjc.state.ma.us

13-P-1498                                        Appeals Court

TODD DRUMMEY & others[1]  vs.  TOWN OF FALMOUTH & others.[2]

No. 13-P-1498.

Barnstable.     September 5, 2014. - February 26, 2015.

Present:  Cypher, Grasso, & Fecteau, JJ.[3]


Zoning, By-law, Special permit, Governmental use, Permitted use.
    Municipal Corporations, By-laws and ordinances.


Civil actions commenced in the Superior Court Department on
March 21, 2011.

After consolidation, the cases were heard by Robert C.
Rufo, J.


Christopher G. Senie for the plaintiffs.
Frank K. Duffy, Jr., Town Counsel, for the defendants.

_____

[1] Mark Cool, Brian Elder, Barry Funfar, Lawrence
Worthington, Robert Laird, Neil Andersen, and Elizabeth
Andersen.

[2] The building commissioner of Falmouth and the zoning board
of appeals of Falmouth.

[3] Justice Grasso participated in the deliberation on this
case prior to his retirement.

CYPHER, J.  We are asked to decide in this case whether the town of Falmouth (town) was required to obtain a special permit from the zoning board of appeals of Falmouth (ZBA) for the installation of a wind turbine on town land.  We conclude that, under the town's zoning by-law (by-law), a special permit was required.

Background.  The plaintiffs are Falmouth residents who live between 1,300 and 3,200 feet from a wind turbine known as "Wind 1,"[4] installed in 2009 on town land at its wastewater treatment facility (WWTF).  Alleging significant distress from sound pressures and noise from the operation of Wind 1, Neil Andersen and Elizabeth Andersen (collectively, the Andersen plaintiffs), on August 25, 2010, sought an enforcement action by the town's building commissioner asserting that the town was in violation of the by-law by operating Wind 1 without a special permit.  The building commissioner denied their request in a letter dated September 24, 2010, and the Andersen plaintiffs appealed to the ZBA, which affirmed the building commissioner in a decision dated March 3, 2011.  Separate actions for relief under G. L. c. 40A, § 17, were filed in the Superior Court by the Andersen

---

[4] Wind 1, first operational in 2010, is a Vestas V-82, 1.65 megawatt wind turbine installed by the town on a 314.6-acre parcel in a public use zoning district.  The WWTF uses a portion of the electricity generated by Wind 1, and the excess is sold to the utility company NStar's (now known as Eversource) electric grid.

plaintiffs and by the remaining plaintiffs. After consolidation of the cases below, and a bench trial, a judge on June 18, 2013, ordered that judgments enter affirming the decision of the ZBA.[5]

Discussion. At trial, the plaintiffs argued that the building commissioner and the ZBA incorrectly interpreted the by-law to allow the issuance of a building permit for Wind 1 without a special permit, citing § 240-166 of the by-law which provides that a petitioner may apply for a special permit to allow construction of a windmill.[6] The judge, however, deferred to the opinion of the building commissioner, affirmed by the ZBA, that the by-law "does not apply in the limited circumstance where the Town itself desires to construct and operate a windmill for municipal purposes in a district where all such purposes are permitted as of right."

Interpretation of the town's by-law raises a question of law. Goldlust v. Board of Appeals of N. Andover, 27 Mass. App. Ct. 1183, 1184 (1989). We "review the judge's determinations of law, including interpretations of zoning bylaws, de novo." Shirley Wayside Ltd. Partnership v. Board of Appeals of Shirley,

---

[5] Although the record below indicates that consolidation occurred, judgment entered in each of the two separate actions for relief.

[6] The by-law uses the term windmills throughout, defined in § 240-13 as "[a]ny device which converts wind energy to mechanical or electrical energy." The parties agree that the wind turbine Wind 1 is a windmill, and we use the terms interchangeably.

461 Mass. 469, 475 (2012).  The judge and the ZBA affirmed the building commissioner's decision without modification; therefore we examine that decision to determine whether the building commissioner's interpretation of the by-law was correct.[7]

In reaching his decision that a special permit was not required, the building commissioner determined that Wind 1 is a "municipal purpose[]" that falls within the enumerated community service uses permitted as of right in § 240-30B of the by-law, which includes:  "All municipal purposes, including the administration of government, parks, playgrounds, recreation buildings, Town forests, watershed, water towers and reservoirs, beaches, fire and police stations and armories."  We think that this interpretation of the by-law to include Wind 1 as a permitted community service use was error.

As in other districts of the by-law, windmills are specifically designated in the public use district as an accessory use by special permit.  Therefore it logically follows that windmills could not have been intended to fall within the more general municipal purpose as of right within § 240-30B of the by-law.  See Miles-Matthias v. Zoning Bd. of Appeals of

---

[7] The judge noted that the ZBA "by default" concluded that Wind 1 was a use permitted as of right.  In the ZBA decision, three members voted to reverse the decision of the building commissioner, with one member opposed.  Because four votes of the five-member ZBA are required to reverse the decision, see G. L. c. 40A, § 15, the decision of the building commissioner stood.

Seekonk, 84 Mass. App. Ct. 778, 789 (2014) (canon of construction "inclusio unius est exclusio alterius" provides that "statutory expression of one thing is an implied exclusion of other things omitted from the statute"), quoting from Harborview Residents' Comm., Inc. v. Quincy Hous. Authy., 368 Mass. 425, 432 (1975). Furthermore, § 240-18 of the by-law states that where an activity might be classified under more than one of the within uses, "the more specific classification shall govern; if equally specific, the more restrictive shall govern. Uses not classifiable under any category listed for the applicable district are prohibited, except that a use listed nowhere in Articles V through XIII may be allowed on special permit if the Board of Appeals determines that it closely resembles in its neighborhood impacts a use allowed or allowed on special permit in that district." Furthermore, § 240-17 of the by-law states: "No building or structure shall be erected, altered or extended and no premises shall be used, except as provided in Articles V through XIII, [the] district use regulations."

The judge noted in upholding the building commissioner that the list of municipal purposes in § 240-30B of the by-law was illustrative and not limiting. While that is an accurate characterization of the list, it does not adequately consider the weight that must be given a specific by-law provision that

has been drafted to take into account the public welfare.  The classification of windmills as a permitted municipal purpose fails to consider § 240-33G(5), which is part of a comprehensive scheme to include wind turbines in the by-law and control their placement and impact in the town.  We are not to look at provisions of a by-law in isolation; we must read them contextually.  Livoli v. Zoning Bd. of Appeals of Southborough, 42 Mass. App. Ct. 921, 922 (1997).  Windmills were added as art. XXXIV of the by-law by an amendment authorized by a vote of the town meeting on September 10, 1981.[8]  The public use district, identified as art. VII, was amended to include windmills as a special permit use in § 240-33G(5) of the by-law, and the ZBA is the permit-granting authority.

Because the by-law does not contain any exemption for the town from its provisions, contrast Sinn v. Selectmen of Acton, 357 Mass 606, 608 (1970), it is apparent that the decisions of the ZBA and the Superior Court judge, which relied on an incorrect interpretations of the by-law, are not entitled to deference.  See Mauri v. Zoning Bd. of Appeals of Newton, 83 Mass. App. Ct. 336, 342 (2013), and cases cited.  And we conclude that those decisions are based on "a legally untenable

_____

[8] The warrant submitted at the town meeting stated that art. XXXIV would "[c]reate . . . sections [in the by-law] which will generally allow windmills throughout the Town, by special permit from the Board of Appeals."  These sections appear in the by-law at § 240-166A-E.

ground, [are] unreasonable, . . . [and are] arbitrary."

MacGibbon v. Board of Appeals of Duxbury, 356 Mass. 635, 639

(1970).

The plaintiffs also assert that the town failed to obey the

use permit requirements in § 240-166D of the by-law.  The

requirements of § 240-166D, quoted in the margin,[9] pertain to

considerations of potential impacts on neighbors as well as

safety in the operation of windmills, and it appears that many

of the requirements are specific to wind turbines and are not

found in local or Massachusetts building codes.  The building

commissioner testified that he issued a conventional use and

occupancy permit and did not assert that such a permit indicated

compliance with the requirements of § 240-166D.  Compliance with

---

[9] "All windmills shall require a use permit to be in
operation.  No use permit shall be issued before an inspection
and certification of compliance is accomplished by a registered
professional engineer with a mechanical or structural
background, nor before a determination by the Building
Commissioner that all the conditions of this chapter and any
special permit have been met.  All windmills shall require a
biennial inspection by a registered professional engineer with a
mechanical or structural background, and any windmill which
fails to undergo such an inspection shall be deemed to be in
violation of this chapter and the special permit.  The Building
Commissioner shall require immediate corrective action on any
noted deficiency.  Failure to comply shall be deemed to be a
violation of this chapter and the special permit."

those requirements must be made in the course of an application for a special permit.[10]

Conclusion. For the reasons given, we vacate the June 18, 2013, judgments of the Superior Court.[11] The matter is remanded to the Superior Court, where new judgments shall enter consistent with this opinion.

So ordered.

---

[10] We decline to consider the request of the plaintiffs to order the town to cease the operation of Wind 1 until a special permit is issued. Article XXXVII, §§ 240-179 and 240-180, of the by-law assign such enforcement actions to the building commissioner in the first instance.

[11] See note 5, supra.