# IN THE SUPREME COURT OF MISSISSIPPI

## NO. 2016-CP-00616-SCT

*ARLIN GEORGE HATFIELD, III*

*v.*

*THE BOARD OF SUPERVISORS OF MADISON COUNTY, MISSISSIPPI*

| | |
|---|---|
| DATE OF JUDGMENT: | 03/08/2016 |
| TRIAL JUDGE: | HON. STEVE S. RATCLIFF, III |
| TRIAL COURT ATTORNEYS: | STEVEN H. SMITH |
| | KATHERINE BRYANT SNELL |
| | A. MICHAEL ESPY |
| COURT FROM WHICH APPEALED: | MADISON COUNTY CIRCUIT COURT |
| ATTORNEY FOR APPELLANT: | ARLIN GEORGE HATFIELD, III (PRO SE) |
| ATTORNEY FOR APPELLEE: | KATHERINE BRYANT SNELL |
| NATURE OF THE CASE: | CIVIL - STATE BOARDS AND AGENCIES |
| DISPOSITION: | AFFIRMED - 08/10/2017 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |

**BEFORE WALLER, C.J., KING AND MAXWELL, JJ.**

**MAXWELL, JUSTICE, FOR THE COURT:**

¶1.     "'[I]n construing a zoning ordinance, unless manifestly unreasonable, great weight should be given to the construction placed upon the words by the local authorities.'"[1] And if the ordinance's application is "fairly debatable," the decision of the Board of Supervisors

---

[1] *Hall v. City of Ridgeland*, 37 So. 3d 25, 40 (Miss. 2010) (quoting *Columbus & Greenville Ry. Co. v. Scales*, 578 So. 2d 275, 279 (Miss. 1991)).

must be affirmed.[2]  Here, the Madison County Board of Supervisors (the Board) found Arlin George Hatfield, III—who raised "chickens, guineafowl, and ducks"—violated a Madison County Zoning Ordinance (the Ordinance) section, which did not expressly permit raising and keeping fowl in residential neighborhoods.  The Board's decision was consistent with an earlier interpretation and application of the Ordinance section.

¶2.    After review, based on the Board's prior treatment of a similar matter and its construction of the applicable zoning law, we find the Board's decision was neither arbitrary nor capricious.  And the interpretation was certainly not "manifestly unreasonable."  This Court also finds that, in light of the entire Ordinance, Hatfield had sufficient notice that keeping or raising fowl on residential property was prohibited.  We therefore affirm the Madison County Circuit Court's ruling, which affirmed the Board's interpretation and decision.

**Background Facts and Procedural History**

¶3.    In July 2012, Hatfield purchased Lot 1 in Phase 1 of Deer Haven subdivision in Madison, Mississippi.  At some point after purchasing the lot, Hatfield began raising chickens, guineafowl, and ducks on the property.

¶4.    According to Hatfield, in October 2013, he was sued by the Deer Haven Owners Association (DHOA).[3]  The claim stemmed from his supposed violation of subdivision

---

[2] *Saunders v. City of Jackson*, 511 So. 2d 902, 906 (Miss. 1987).

[3] DHOA's lawsuit is not part of this record.  Instead, Hatfield references the DHOA lawsuit in his Bill of Exceptions, and in his "Optional Record Excerpts" on appeal, as "Civil Action No. 2013-1076, Madison County Chancery Court."

covenants that prohibited keeping or raising fowl[4] and constructing structures—such as pens and coops—without DHOA approval. Hatfield alleges that while this lawsuit was pending, DHOA contacted and involved Scott Weeks, an administrator with the Madison County Planning and Zoning Department. Weeks inspected Hatfield's property on February 18, 2015, and found Hatfield was violating the "R-1 Residential District" section of the Madison County Zoning Ordinance. The violation was based on Hatfield "keeping or raising poultry," which is neither a permitted nor a conditional use under R-1 zoning. Weeks followed up his inspection with a letter, dated March 13, 2015. The letter detailed the violation and advised Hatfield to remove the "chickens, guineafowl, and ducks."

¶5. Weeks inspected Hatfield's property twice more. His April 1 and April 13 visits revealed Hatfield had not removed the fowl. Again, Weeks sent a followup letter, this one dated April 13, 2015. The letter explained that, because Hatfield had failed to correct the violation, the matter would be presented to the Madison County Board of Supervisors (the Board).

¶6. On June 1, 2015, the Board heard presentations and recommendations from Weeks, County Attorney Mike Espy, Hatfield's counsel, and DHOA's lawyer. After considering the arguments, the Board voted unanimously to accept Weeks's and Espy's findings and recommendations. The Board found Hatfield had violated R-1 zoning by keeping or raising around sixty "ducks, geese and other fowl" on his Deer Haven lot. The Board found these

---

[4] The term "fowl" is used to refer collectively to "chickens, ducks, turkeys, geese, or other fowl . . . ," as described in Article V, Section 501(G) of the Madison County Zoning Ordinance.

acts were neither a permitted nor a conditional use under R-1 zoning. The Board also denied Hatfield's request to continue to keep or raise fowl on the property.

¶7.    Hatfield filed a Notice of Appeal and Intent to File Bill of Exceptions on June 10, 2015. He filed his Bill of Exceptions on August 19, 2015. In it, he argued the Board's decision was arbitrary and capricious, not supported by substantial evidence, and was based on an unconstitutionally vague Ordinance section. The Board responded through its counsel, insisting its decision was not arbitrary or capricious. The Board urged its decision mirrored a previous similar ruling in another matter—that keeping or raising fowl was not a permitted or conditional use under R-1 zoning. And the Ordinance section dealing with R-1 zoning clearly listed the permitted uses, particularly when viewed in light of other sections. Sitting as an appellate court, the circuit judge found the Board's decision was "fairly debatable," supported by substantial evidence, and not arbitrary or capricious.

¶8.    Hatfield now appeals to this Court. He argues: (1) the Board's decision was arbitrary, capricious, and unsupported by substantial evidence, and (2) Section 601 of the Madison County Zoning Ordinance is unconstitutionally vague and therefore void.

**Discussion**

¶9.    Zoning issues are "legislative in nature." ***Thomas v. Bd. of Supervisors of Panola Cty.***, 45 So. 3d 1173, 1180 (Miss. 2010) (citing ***Luter v. Hammon***, 529 So. 2d 625, 628 (Miss. 1988)). And "[z]oning ordinances should be given a fair and reasonable construction, in the light of their terminology, the objects sought to be obtained, the natural import of the words used in common and accepted usage, the setting in which they are employed, and the

4

general structure of the zoning ordinance as a whole." *City of Gulfport v. Daniels*, 231 Miss. 599, 604–05, 97 So. 2d 218, 220 (1957). A key function of a county board, city council, or board of aldermen is to *interpret* its zoning ordinances. And "[t]he cardinal rule in construction of zoning ordinances is to give effect to the intent of the lawmaking body." *Columbus & Greenville Ry. Co. v. Scales*, 578 So. 2d 275, 279 (Miss. 1991) (citations omitted). Local boards are in the most advantageous position to interpret and apply local ordinances. That is why "[i]n construing a zoning ordinance . . . great weight should be given to the construction placed upon the words by the local authorities." *Id*. (citations omitted). But our courts are certainly not bound by a board's interpretation of a local ordinance if it is "manifestly unreasonable." *Id*. And we will reverse in such instances.

¶10.   As to the ordinance's application, this Court will affirm a board's zoning decision unless it is clearly "arbitrary, capricious, discriminatory, illegal, or without [a] substantial evidentiary basis." *Drews v. City of Hattiesburg*, 904 So. 2d 138, 140 (Miss. 2005) (citing *Perez v. Garden Isle Cmty. Ass'n*, 882 So. 2d 217, 219 (Miss. 2004); *Carpenter v. City of Petal*, 699 So. 2d 928, 932 (Miss. 1997)). If a board's zoning decision is "fairly debatable[,]" we will not reverse it. *Id*.

¶11.   Justice Coleman recognizes this Court's precedent but advocates we change the law and pursue a new approach. What he prefers is a purely de novo review, giving absolutely no deference to interpretations by local governing boards. We disagree with the wisdom of this suggestion. We also see no constitutional infirmity in our present law.

¶12.   The first problem with this suggested change is that it overlooks the practical reality

5

that, to resolve zoning issues, local governing boards must *interpret* ordinances to *apply* them. If we were to accept this logic to its ultimate conclusion, local boards would have to stop and run to the courthouse for guidance every time an ordinance-interpretation question arises.[5]

¶13.	Second, Mississippi's law does not run afoul of Sections 1 and 2 of our Constitution. The Board is not overstepping its bounds into the judiciary's role by interpreting local ordinances. The Board is simply acting within its own established role as creator and enforcer of local law. Similarly, by giving deference to a local board's interpretation, we are not ceding our judicial power. In the cases that have applied a deferential standard of review, this Court has never suggested we lack authority to reverse a board's decision. Instead, what we have recognized is the obvious—that a local board is in the best position to interpret its own local ordinances. Thus, by giving great weight to the Board's interpretation, we ensure we stick to our constitutional role as the judiciary. And we restrain our branch from becoming a super-municipal board—a role that would certainly usurp the powers of the local governing body.

##	I.	The Board's Decision

¶14.	With this standard in mind, the Ordinance clearly defines the permitted uses for each of the two relevant sections—A-1 zoning under Section 501 and R-1 zoning under Section 601. A-1 zoning covers "Agricultural Districts," while R-1 zoning applies to "Residential

---

[5] The same logic would apply to any administrative agency that interprets its own regulations. Under the dissent's view, we must also give no deference to agency interpretations. This would require we overrule other established precedent. *E.g.*, ***Equifax, Inc. v. Mississippi Dep't of Rev.***, 125 So. 3d 36, 41 (Miss. 2013).

Estate Districts."

## A. Agricultural Districts

¶15. Article V, Section 501, of the Ordinance defines the "LAND USES PERMITTED" for A-1 zoning. Section 501(F) permits A-1 zoned land to be used for "Breeding, raising, and feeding of livestock (i.e. horses, cattle, sheep, goats, mules, pigs, etc.), provided that each such animal herein defined as 'livestock' shall be kept on a tract of land or lot of one (1) acre or land or greater." And subsection (G) permits the "Breeding, raising and feeding of chickens, ducks, turkeys, geese, or other fowl[.]"

¶16. So in Agricultural Districts, breeding, raising, and feeding fowl is an expressly permitted use.

## B. Residential Estate Districts

¶17. The problem Hatfield faces is that he lives in Deer Haven subdivision—which is not zoned as an Agricultural District. Thus, the permitted uses under A-1 zoning do not apply to his neighborhood. Instead, Deer Haven subdivision is zoned as a Residential Estate District. Thus, it is subject to the express permitted uses allowed under R-1 zoning.

¶18. Article VI, Section 601 defines the "LAND USES PERMITTED" for R-1 zoning. Section 601(D) states:

> Breeding, raising, and feeding of grazing livestock (i.e. horses, cattle, sheep, goats, mules, etc.), provided that each such animal herein defined as "grazing livestock" shall be kept on a tract of land or lot of one (1) acre of land or greater. Barns, pens, corrals, and other buildings or enclosures for the keeping of livestock are permitted accessory uses, provided that such buildings or enclosures (excluding open pastures) are located no closer than 50 feet from any adjoining property lines or existing street right-of-way line.

7

But unlike A-1 zoning, R-1 does not include breeding, raising, and feeding chickens, ducks, or other fowl as a permitted use.[6]

¶19.   The Board noted this obvious distinction and found Hatfield was in violation of Section 601, since keeping or raising fowl is not listed as a permitted use in R-1 zoned areas like Deer Haven subdivision.

¶20.   In construing R-1 zoning's permitted uses, the Board concluded "livestock" and "grazing livestock" did not include fowl.  Hatfield claims this decision was arbitrary and capricious.  As support, Hatfield points to deposition testimony from the separate DHOA lawsuit.  In that action, Weeks supposedly testified that he was uncertain what the phrase "grazing livestock" encompasses.  Hatfield couples this deposition testimony—which is not a part of this record—with the Ordinance's lack of *exclusive* definitions for "livestock" or "grazing livestock."[7]  We find this interpretation is not "manifestly unreasonable."

---

[6] Article VI, Section 602 defines the "CONDITIONAL USES AND STRUCTURES AS PROVIDED IN SECTION 2605" for R-1 zoning.  These conditional uses allow for expanded uses of R-1 zoned land, subject to a conditional use permit.  However, the keeping or raising of fowl is not a specified conditional use for R-1 zoned land.  And Hatfield makes no argument on appeal to suggest otherwise.

[7] Hatfield provides voluminous "Optional Record Excerpts" that include documents not in the record before this Court.  Throughout his arguments, Hatfield continually refers to other depositions, litigation, transcripts, and other material not properly part of this appeal.  Hatfield also asserts the Board's June 1, 2015, minutes do not correspond with his court reporter's transcript.  Yet Hatfield provides no specific discrepancies between his transcript and the Board's minutes to show the Board "failed to adopt the recommendation of their Zoning Administrator or of their attorney."  So this argument is unsupported.  Moreover, a Board can act only through its minutes.  *See* Miss. Code Ann. § 19-3-27 (Rev. 2012); *see also* **Butler v. Bd. of Supervisors for Hinds Cty.**, 659 So. 2d 578 (Miss. 1995).  And the record shows the Board's signed minutes adopted the recommendations of Planning and Zoning Administrator Scott Weeks and County Attorney Mike Espy, who both asserted Hatfield was in violation of Section 601.

¶21. In applying an ordinance, an arbitrary decision is one "not done according to reason or judgment, but depending on the will alone." *Thomas*, 45 So. 3d at 1181 (quoting *Gentry v. City of Baldwyn*, 821 So. 2d 870, 873 (Miss. Ct. App. 2002)). A capricious decision is one "implying either a lack of understanding of or a disregard for the surrounding facts and controlling principles." *Id*.

¶22. We find the Board's decision to deny Hatfield's request to continue keeping or raising fowl was not arbitrary, especially when viewed in light of Section 501. Weeks's testimony in the DHOA lawsuit is not properly a part of this record. Nor does Hatfield provide authority to show Weeks's interpretations of the Ordinance, in his DHOA lawsuit deposition, are binding. And the Board noted that, in addition to livestock, A-1 zoned land expressly lists keeping or raising fowl as a separate, specific permitted use. But R-1 zoned land—like Deer Haven subdivision—does not. So the Board's decision that "chickens, guineafowl, and ducks" were not permitted on Hatfield's residential property was not based on its mere will, but was reasoned.

¶23. Nor was the Board's decision capricious. The Board considered its past actions in interpreting and applying Section 601, which were consistent with this decision. The minutes specifically reference a previous distinct matter, *Nancy Field v. Madison County Board of Supervisors*, Civil Act. No. CI-2014-0140. There, the Board took the same position on Section 601—that keeping or raising fowl was not permitted on R-1 zoned land.

¶24. Still, even if this Court had some uncertainty with the Board's decision, where the issue is "'[f]airly debatable' [it] is the antithesis of arbitrary and capricious." *Fondren N.*

9

*Renaissance v. Mayor & City Council of the City of Jackson*, 749 So. 2d 974, 977 (Miss. 1999) (citing *Saunders v. City of Jackson*, 511 So. 2d 902, 906 (Miss. 1987)). And we find the Board's decision is, at a minimum, fairly debatable.

¶25. We therefore find the Board's decision was supported by substantial evidence, was neither arbitrary nor capricious, and was unquestionably fairly debatable.[8]

## II. Constitutionality of Section 601

¶26. Hatfield also insists that, by not *exclusively* defining "livestock" or "grazing livestock," Section 601 could be interpreted to include poultry, fowl, and/or birds. Thus, he suggests, Section 601 is unconstitutionally vague and lacks "clear notice and sufficiently definite warning of that which is prohibited." *Mayor & Bd. of Aldermen, City of Clinton v. Welch*, 888 So. 2d 416, 421 (Miss. 2004). We disagree.

¶27. Section 601 gives the following examples of permitted "livestock"— "(i.e. horses, cattle, sheep, goats, mules, etc.)." But Hatfield says these examples are not enough. He argues that because "livestock" and "grazing livestock" are used interchangeably, and the parenthetical contains the phrase "et cetera," Section 601 gives no clear notice of what is considered "livestock." This position is unreasonable. The listed examples are obviously limited to large, four-legged, hoofed animals—not "chickens, ducks, turkeys, geese, or other fowl[.]" And there is no reasonable interpretation to the contrary.

---

[8] Hatfield suggests the Board's decision lacks substantial support, though he does not contest that he was keeping or raising fowl on his property. What Hatfield disputes is the number of fowl, claiming it was twelve to fifteen, not sixty. So his complaint really deals more with the supposed arbitrariness and capriciousness of the Board's decision, not a lack of substantial evidence supporting it.

10

¶28.    Still, Hatfield argues the Board's decision and application of Section 601 is analogous to the circumstances faced in *Welch* and *Nichols v. City of Gulfport*, 589 So. 2d 1280 (Miss. 1991).

¶29.    In *Welch*, the City of Clinton's Building and Zoning Inspector gave property owners verbal permission to build a tree house in their front yard.  *Welch*, 888 So. 2d at 425.  But after giving permission, the City backtracked and sought to enforce a prohibition against accessory structures and uses in front yards.  *Id*. at 419-20.  In the midst of that municipal squabble, the City altered certain definitions—omitting the terms "accessory building or use" and replacing them with "accessory structure or use."  This ultimately led to confusion over the vague, unclear, and before then, never-used definitions for a "detached structure" and "use" thereof.  *Id*.  So this Court found "accessory building or use" to be vague and unclear. *Id*. at 427-28.   Furthermore, the City was equitably estopped from initially granting permission to build the tree house, then changing its interpretation midstream. *Id*. at 426-27.

¶30.    In *Nichols*, this Court found a City of Gulfport noise ordinance unconstitutionally vague.  We found the decision whether a particular noise was "'unnecessary,' 'unusual,' or 'annoying'" involved a subjective standard—something that depended entirely on the ears of each complainant.  *Nichols*, 589 So. 2d at 1284.

¶31.    Both cases are easily distinguished from this one.  The question here is far simpler: Are the terms "grazing livestock" and "livestock," along with the express examples, sufficient to notify Hatfield that keeping or raising fowl on his property was prohibited? Based on the Ordinance's listed examples and the differing permitted uses for Agricultural

11

and Residential Districts, the answer is yes.

¶32.    And Hatfield's situation differs from *Welch*, as the Board has consistently interpreted its Ordinance, and Hatfield was never given permission to keep or raise fowl.  Nor is it similar to *Nichols*, since the Ordinance's definition of "livestock" or "grazing livestock" is not unique to each property owner, resulting in a purely subjective definition.

¶33.    Also important is the requirement that this Court not read zoning ordinance sections in isolation.  *See* **City of Gulfport v. Daniels**, 231 Miss. 599, 608, 97 So. 2d 218, 222 (1957) (zoning ordinances must be read *in pari materia*).  Here, Article V sections, which control Agricultural Districts, immediately precede the Article VI sections dealing with Residential Districts.  And Article V, Section 501(G), lists as a specific permitted use the "[b]reeding, raising and feeding of chickens, ducks, turkeys, geese, or other fowl[.]"  But this specific permitted use is notably absent from those uses found in Section 601 for Residential Estate Districts.

¶34.    Not only do the listed examples make clear that "livestock" or "grazing livestock" does not include fowl, but the differing express permitted uses of the two districts—A-1 and R-1—put Hatfield on notice that keeping or raising fowl was not allowed on R-1 zoned land.

¶35.    We find the Ordinance is sufficiently clear that keeping or raising fowl, while expressly permitted in A-1 zoned districts, is not permitted in R-1 zoned districts.  And the Board's interpretation to this effect is not manifestly unreasonable.

**Conclusion**

¶36.    The Board's interpretation and decision, finding that Hatfield violated Section 601 by

12

keeping or raising fowl on his R-1 zoned property, was reasonable and not arbitrary or capricious. Its decision was also, at a minimum, fairly debatable. Likewise, Section 601, when read in light of the entire Madison County Zoning Ordinance, gave Hatfield sufficient notice that keeping or raising fowl on his property was prohibited. We therefore affirm the circuit court's decision.

¶37. **AFFIRMED.**

**WALLER, C.J., RANDOLPH, P.J., KING, BEAM AND CHAMBERLIN, JJ., CONCUR. COLEMAN, J., CONCURS IN PART AND IN RESULT WITH SEPARATE WRITTEN OPINION JOINED BY DICKINSON, P.J., AND KITCHENS, J.**

**COLEMAN, JUSTICE, CONCURRING IN PART AND IN RESULT:**

¶38. I concur with the majority's analysis of today's case with the exception that I am of the opinion that our standard of review when interpreting an existing zoning ordinance should be *de novo*. However, even under a *de novo* standard of review, I agree with the result reached by the majority, that is, that the ordinance in question does not authorize Hatfield to keep fowl on his property.

> **I.    The Court's standard of review as to the interpretation of the pertinent zoning ordinance should be *de novo*.**

¶39. Hatfield contends that the interpretation of the Madison County Ordinance 601 is a question of law and should be subject to a *de novo* standard of review. Although we have held, in cases discussed more fully below, that the courts should grant deference to local legislative bodies in their interpretations of ordinances, I disagree for two reasons. First, an overwhelming majority of our sister states have held that reviews of interpretations of zoning

13

ordinances are questions of law, and we consistently have maintained – even in zoning cases – that the standard of review for questions of law is *de novo*. Second, because the interpretation of ordinances is a question of law, sharing the authority to interpret statutes and ordinances with another branch of government violates Article I, Section 2 of the Mississippi Constitution of 1890, which forbids the sharing of power between the three branches of state government. Because our cases in which we hold that deference should be afforded to the local legislative body in interpreting ordinances create conflict with the usual *de novo* standard of review applicable to questions of law and, further, indicate that the Courts have ceded judicial power to other branches of government in violation of Section 2 of the Constitution of 1890, I would hold that henceforth we will review the interpretation of zoning ordinances *de novo*. Of necessity, I would further overrule cases that indicate that the courts should give deference to the local zoning authorities when it comes to interpreting existing zoning ordinances.

A.     The interpretation of zoning ordinances is a question of law.

¶40.   I agree with the majority when it writes that, even in zoning cases, questions of law are reviewed *de novo*. (Maj. Op. at ¶ 9) (citing, *inter alia*, **Drews v. City of Hattiesburg**, 904 So. 2d 138, 140 (¶ 5) (Miss. 2005)). However, I depart here from the majority, because the interpretation of ordinances presents a question of law. I am persuaded by authority from nearly half of our states – and one commonwealth – that have so described it. *See, e.g., Flat Rock Wind, LLC v. Rush Cty. Area Bd. of Zoning Appeals*, 70 N.E.3d 848, 857 (¶ 23) (Ind. App. 2017) ("[A] review of the interpretation of a zoning ordinance is a question of law.");

14

*River's Edge Funeral Chapel and Crematory, Inc. v. Zoning Hearing Bd. of Tullytown Borough*, 150 A.3d 132, 139 (Pa. Commw. Ct. 2016) ("Whether a proposed use falls within a given zoning ordinance categorization is a question of law."); *Kobyluck Bros., LLC v. Panning and Zoning Comm'n of Town of Waterford*, 167 Conn. App. 383, 391, 142 A.3d 1236, 1241 (Conn. App. Ct. 2016) ("Although the position of the municipal land use agency is entitled to some deference . . . the interpretation of provisions in the ordinance is nevertheless a question of law for the court. . . ."); *City of Dunwoody v. Discovery Practice Mgmt., Inc.*, 338 Ga. App. 135, 139, 789 S.E.2d 386, 390 (Ga. Ct. App. 2016) ("The construction of a zoning ordinance is a question of law for the courts."); *RDNT, LLC v. City of Bloomington*, 861 N.W.2d 71, 75 (Minn. 2015) (acknowledging that the interpretation of an existing ordinance is a question of law subject to *de novo* review); *Drummy v. Town of Falmouth*, 87 Mass. App. Ct. 127, 128, 25 N.E.3d 907, 908 (Mass. App. Ct. 2015) ("Interpretation of the town's by-law raises a question of law."); *Columbro v. Lebabon Twp. Zoning Bd. of Adjustment*, 424 N.J. Super. 501, 508, 38 A.3d 675, 680 (N.J. Super. Ct. App. Div. 2012) ("[T]he the interpretation of an ordinance is primarily a question of law."); *Sutton v. Town of Gilford*, 160 N.H. 43, 57, 992 A.2d 709, 721 (2010) ("The construction of the terms of a zoning ordinance is a question of law, which we review *de novo*."); *Aydelott v. City of Portland*, 990 A.2d 1024, 1026 (¶ 10) (Me. 2010) ("The interpretation of a local ordinance is a question of law, and we review that determination *de novo*."); *City of Mosier v. Hood River Sand, Gravel and Ready-Mix, Inc.*, 206 Or. App. 292, 302, 136 P.3d 1160, 1167 (Or. Ct. App. 2006) (acknowledging that Oregon appellate courts review the

construction of ordinances as a matter of law); ***Williams v. Dep't of Bldg. Dev. Serv. of City of Springfield***, 192 S.W.3d 545, 547 (Mo. Ct. App. 2006) ("Although the interpretation of a city ordinance is a question of law, the interpretation given to the language by the body in charge of its enactment and application is also entitled to great weight."); ***Smith v. Bernalillo Cty.***, 137 N.M. 280, 285, 110 P.3d 496, 501 (2005) ("Interpretation of a zoning ordinance is a matter of law that we review *de novo* using the same rules of construction that apply to statutes."); ***Heilker v. Zoning Bd. of Appeals for City of Beaufort***, 346 S.C. 401 (July 23, 2001), ***Brandon Charter Twp. v. Tippett***, 241 Mich. App. 417, 421, 616 N.W.2d 243, 245 (2000) (stating that because party asked the appellate court to interpret a zoning ordinance, he presented the court "with a question of law subject to review *de novo*."); ***Kirkpatrick v. Vill. Council for Vill. of Pinehurst***, 138 N.C. App. 79, 85, 530 S.E.2d 338, 342 (2000) ("[P]roper interpretation of a zoning ordinance is a question of law."); ***Larsen v. Town of Colton***, 94 Wash. App. 383, 394, 973 P.2d 1066, 1072 (1999) ("Interpretation of a zoning ordinance is a question of law."); ***Schrank v. Pennington Cty. Bd. of Comm'rs***, 584 N.W.2d 680, 683 (S.D. 1998) ("The meaning of terms in a zoning regulation is a matter of law for the court.");***Lauridsen v. City of Okoboji Bd. of Adjustment***, 554 N.W.2d 541, 543 (Iowa 1996) ("Although we give deference to the board of adjustment's interpretation of its city's zoning ordinances, final construction and interpretation of zoning ordinances is a question of law for us to decide."); ***Warren v. Zoning Bd. of Appeals of City of Fairfield***, 255 Ill. App. 3d 482, 486, 625 N.E.2d 1213, 1216, 193 Ill. Dec. 92, 94 (Ill. App. Ct. 1994) ("The construction of a zoning ordinance is a question of law, and the reviewing court may make

an independent determination of questions of law."); ***Ex parte Norwood***, 615 So. 2d 1210, 1212 (Ala. Civ. App. 1992) ("Construction of a zoning ordinance is a question of law. . . ."); ***Kaiser v. Western R/C Flyers, Inc.***, 239 Neb. 624, 628, 477 N.W.2d 557, 560 (1991) ("The interpretation of a zoning ordinance presents a question of law. . . ."); ***Hambleton v. Friedmann***, 117 Wis. 2d 460, 461, 344 N.W.2d 212, 213 (Wis. Ct. App. 1984) ("The meaning of an ordinance is a question of law that we independently decide."); ***Dampman v. City of Baltimore***, 231 Md. 280, 284, 189 A.2d 631, 633 (1963) ("It thus appears that this case presents substantially no conflict as to fact but merely a question of law involving the construction of the zoning ordinance with reference to special exceptions."); ***City of Norwalk v. Auction City, Inc.***, 186 Cal. App. 2d 287, 290, 8 Cal. Rptr. 781, 783 (Cal. Dist. Ct. App. 1960) ("The question of the construction of the ordinance is one of law."); ***Mills v. Brown***, 159 Tex. 110, 114, 316 S.W.2d 720, 723 (1958) ("The same rules apply to the construction of municipal ordinances as to the construction of statutes.").

¶41. To be clear, some of the courts listed above give varying degrees of deference in interpreting zoning ordinances despite categorizing the interpretation as a matter of law. However, Mississippi courts should review them *de novo*. Again, in cases involving the interpretation of zoning ordinances, questions of law are reviewed *de novo*. The interpretation of an existing ordinance is a question of law, therefore the Court should review it *de novo* rather than with deference.

> B. The interpretation of the law is a constitutional function of the courts, and sharing the power with other branches by giving deference to another branch's interpretation of the law violates the separation of powers under the

17

Mississippi Constitution of 1890.

¶42.   I agree with Hatfield when he urges the Court to examine the ordinance at issue *de novo* for an additional reason.   The Mississippi Constitution of 1890 draws stark lines between the powers of the three branches of government.   Section 1 reads, "The powers of the government of the State of Mississippi *shall be divided* into three *distinct* departments, and each of them confided to *a separate magistracy*, to-wit: those which are legislative to one, those which are judicial to another, and those which are executive to another." (Emphasis added.)   Following closely on its heels, Section 2 provides as follows:

> No person or collection of persons, being one or belonging to one of these departments, shall exercise any power properly belonging to either of the others. The acceptance of an office in either of said departments shall, of itself, and at once, vacate any and all offices held by the person so accepting in either of the other departments.

To be sure, we have held that in certain limited situations, we have no authority under the Mississippi Constitution to interpret laws when the Constitution authorizes another branch to interpret those laws.  *See,* e.g.*, **Gunn v. Hughes**, 210 So. 3d 969 (Miss. 2017) (holding that the courts lack the constitutional authority to intervene in internal legislative procedure even when the procedures in question are prescribed by the Constitution); ***In re Hooker***, 87 So. 3d 401 (Miss. 2012) (holding that a facially valid pardon would not be set aside by the courts on a claim that a constitutional procedural requirement had not been met).  However, the existence of the exceptions does not change the general reality that it is the function of the courts to interpret the law.

¶43.   Our cases make it clear.   "The ultimate authority and responsibility to interpret the

law, including statutes, rests with this Court." ***Queen City Nursing Ctr., Inc. v. Miss. State Dep't of Health***, 80 So. 3d 73, 84 (¶ 28) (Miss. 2011); *see also **Miss. State and Sch. Emp. Life and Health Plan v. KCC, Inc.***, 108 So. 3d 932, 939 (¶ 20) (Miss. 2013).  Courts have the duty to determine what statutes provide.  ***Lawson v. Honeywell Int'l, Inc.***, 75 So. 3d 1024, 1027 (¶ 7) (Miss. 2011).  Mississippi's Constitution requires a "strict separation of powers."  ***Gunn***, 210 So. 3d at 972 (¶ 13).  If, as we held in cases such as ***Gunn***, ***Hooker***, and ***Hunt v. Wright***, 70 Miss. 298, 11 So. 608 (1892), we must wholly refrain from exercising powers granted only to another branch of government, then surely we must embrace the inverse proposition and wholly exercise those powers and responsibilities conferred upon the courts.  We cannot do so while we also defer the interpretation of statutes – or ordinances – to other branches of government.  Accordingly, I would hold that the interpretation of positive pronouncements of law, such as statutes and ordinances, is a question to be reviewed *de novo*.

> C.  Because our cases in which we hold that deference should be afforded to the local legislative body in interpreting ordinances create a conflict with our continued claim that issues of law are review *de novo* in zoning cases and conflict with the separation of powers under Mississippi's Constitution, we should overrule the cases affording deference in interpretaton of questions of law.

¶44.    The majority cites, *inter alia*, ***Drews v. City of Hattiesburg***, 904 So. 2d 138 (Miss. 2005), to establish a deferential standard of review for the interpretation of the ordinance at issue.  (Maj. Op. at ¶ 10).  In ***Drews***, the question presented was not one of interpreting an ordinance to determine whether a proposed use of land was allowed or not, but whether the

19

Hattiesburg Board of Adjustments acted properly when granting zoning variances. *Id.* at 139-140 (¶ 1). It is worth noting, however, that the *Drews* Court acknowledged that questions of law would be reviewed *de novo*. *Thomas v. Board of Supervisors of Panola County*, 45 So. 3d 1173 (Miss. 2010), which the majority cites for the proposition that zoning issue are of a legislative nature, likewise concerned a decision by a zoning authority to zone land for one use over another. I take no issue whatsoever with affording deference to local authorities when making such decisions.

¶45. However, another line of cases affords deference to the local zoning agencies in the interpretation of zoning ordinances. For example, the Board of Supervisors relies on *Roundstone Development, LLC v. City of Natchez*, 105 So. 3d 317 (Miss. 2013), in which one of the issues before the court was whether an affordable-housing subdivision could be developed under then-existing zoning ordinances. *Id.* at 320 (¶ 11). Relying on *Hall v. City of Ridgeland*, 37 So. 3d 25 (Miss. 2010), cited by the majority, the *Roundstone* Court reviewed the City of Natchez's interpretation of its own zoning ordinance by giving it "great weight" and considering whether the city's interpretation was "manifestly unreasonable."

¶46. The *Hall* Court, in turn, relied on *Columbus & Greenville Railway Company v. Scales*, 578 So. 2d 275 (Miss. 1991), in which can be found the genesis of our deferential review of the zoning authority's interpretation of a zoning ordinance. At issue in *Scales* was whether a local zoning ordinance affected a railroad's attempts to build additional tracks. The *Scales* Court relied on three cases from other jurisdictions in writing that courts should defer to local authorities' interpretation of zoning ordinances: *Drennen v. Mason*, 133 So.

20

689, 691 (Ala. 1931); **Kordick Plumbing and Heating Co. v. Sarcone**, 190 N.W.2d 115, 118 (Iowa 1971); and **Daniel D. Rappa, Inc. v. Engelhardt**, 256 A.2d 744, 746 (Del. 1969). Interestingly, the **Scales** Court's adoption of the deferential standard was *dicta*; in the very next paragraph the Court noted that "the board of supervisors of Leflore County has never been called upon to interpret this zoning ordinance and officially declare whether or not it applies to railroads." **Scales**, 578 So. 2d at 279. Nevertheless, the Court has in fact given deference to zoning authorities' interpretation in later cases such as **Roundstone** and **Hall**. In doing so, the Court has at the least created a conflict within our caseslaw with the *de novo* standard of review for questions of law and, at most, ceded judicial powers to other branches of government in violation of Section 2 of the Mississippi Constitution. Accordingly, I would hold that the standard of review when interpreting existing zoning ordinances is *de novo*, and I would overrule cases that hold otherwise.

II. **The plain language of the zoning ordinance does not authorize the keeping of fowl.**

¶47. Reviewing the residential zoning ordinance *de novo*, rather than for arbitrariness, I nevertheless agree with the result reached by the majority and the lower court. Section 601(D) of Article VI of the Zoning Ordinance of Madison County, Mississippi, which is applicable to Hatfield's property, allows the "[b]reeding, raising, and feeding of grazing livestock (i.e., horses, cattle, sheep, goats, mules, etc.), provided that *each such animal herein defined as "grazing livestock" shall be kept on a tract or lot of one (1) acre of land or greater*. . . ."

¶48. Although the majority employs a different standard of review, I agree with its

reasoning regarding the meaning of the words used in the ordinance. Although Hatfield cites a dictionary definition of the word livestock that includes poultry as an example, not all definitions do. For example, one dictionary defines the term livestock as "the horses, cattle, sheep, and other useful animals kept or raised on a farm or ranch." *Livestock*, Random House Webster's Unabridged Dictionary (2d ed. 2001). While the quoted definition does not explicitly exclude fowl, the focus matches that of the examples listed in the ordinance in that the examples are of four-legged, grass-eating mammals commonly thought of as pastured animals. The definition of the word grazing continues the theme. Grazing is defined as "to feed on growing grass and pasturage, as do cattle, sheep, etc." *Grazing*, Random House Webster's Unabridged Dictionary (2d ed. 2001). Also, the Board of Supervisors chose to preface its list of examples with "*i.e.*," which means "that is." *I.e.*, Random House Webster's Unabridged Dictionary (2d ed. 2001). It is a more restrictive choice than the common alternative, *e.g.*, which means "for example." *E.g.*, Random House Webster's Unabridged Dictionary (2d ed. 2001). In choosing it, and then listing – as the majority points out – four-legged mammals, the Board evidenced the intent not to include fowl. Finally, Hatfield argues that the use of "etc." at the end of the list of animals opens the definition of grazing livestock to fowl. While he is correct that the use of *et cetera* indicates the list is not exhaustive, the phrase denotes "more of the same sort, or class. . . ." *Et cetera*, Random House Webster's Unabridged Dictionary (2d ed. 2001). I agree with the majority that fowl are not of the same sort of class as the animals listed in the Board's definition of grazing livestock.

¶49. Pursuant to the foregoing, I concur with the majority as to every issue except the standard of review for interpreting ordinances. However, even if viewed *de novo*, I am of the opinion that the ordinance in question does not authorize Hatfield to keep fowl on his property in Madison County. Accordingly and with respect I concur in part and in the result.

**DICKINSON, P.J., AND KITCHENS, J., JOIN THIS OPINION.**